OPINION OF THE COURT — bx the
How. JOHN BLACK.
In this case, an issue, of devisavit, vel non, was directed to be tried at the circuit court of Warren county. The jury found against- the validity of a nuncupative will, and the counsel for the defendant moved for a new trial:
1st. Because the court submitted matters oflaw, arising in this case, as well as of the facts; and
2dly, Because the verdict was against law and the evidence.
With respect to the first reason assigned, I do consider the complaint of defendant well founded in point of fact. The report of the judge, after stating the evidence on the trial, concludes thus:
“The court, after summing up the evidence, and having charged the jury that wills of this description should be established with great caution, left them to decide whether, according to our statute, which is very similar to the English statute on the same subject, the will was void.”
If, by this expression, the judge intended to say that lie left to the jury the determination, not only pf the facts, but the law regulating the manner ofmaking wills of this description, and what construction should be put upon the different provisions of the statute, there would be no doubt that matters were left to them, not within the sphere of their duties. It was the duty of the court to charge the jury what were the rules of law governing in such cases; and the jury should have determined whether, according to such rules, the evidence did, or did not establish a will. The construction which defendant’s counsel insist on; might be put on the language of the judge’s report; but I think it Í3 fairly susceptible of a differ *365 ent interpretation. The expression that it was left to the jury to determine “whether, according to our statute, the will was void or not,” does not exclude the inference that the judge who presided, expounded the statute, by stating to the jury what construction should be given to the several provisions of it, and then left it to them to say whether, according to the statute thus explained, there was, or was not a will. It does not conclusively follow from what is said in the report, that no such instructions were given with the general one “whether, according to our statute, the will was void or not?” That the charge of the court was a proper one, there are some circumstances, in this case, decisively proove. The counsel at that time engaged in trying the issue, took no exception to the manner of submitting the case to the jury: it was not assigned, originally, as one of the grounds for a new trial; nor was any thing said with respect to it on the former argument in this court; and even admitting that the ground taken was clearly made out, in point of fact — that the law, as well as the facts were left to the jury*; no intruction having’been asked, and the jury having returned a verdict, which the law and facts justify, — ! think we should not disturb the verdict.
There is, in'this case, no objection to the time or place of making this supposed nuncupative will. It was at his usual place of abode, and in his last illness. The only question is: whether A.R. Gibson, at the tirqe he made use of the expressions attributed to him, had a fixed determination of making a disposition by will; and whether he did it under such circumstances as to constitute them a good nuncupative will ?
The deceased had been for some time confined by a lingering illness; the first time the subject of a will is brought forward, was on the 4th of November, when he was asked, by some of the neighbors present, how he wished his property disposed of, if he should die? He answered that he wished his negroes to go to his cousin Claudius; his horses and other pro? perty to his uncle.
On the 5th, one of the neighbors being present, the uncle of the deceased went to his bed, some short time before his death, and asked him how he wished his property to be disposed of in the event of his death; he asked if he could make a will, and being answered in the affirmative, said his ne? groes to his cousin Glaudius, his horses to his uncle & his cattle to his sister.
*366 The statute requires that the person making a nuncupative -will, shall call on the persons present, or some of them, to take notice that such is his-will, or to that effect: by which it clearly appears necessary that the nun-cupative will should be established by at least two witnesses; or why is it said he shall call on the persons present, or some of them, if one person being present would do? The words made use of in the statute are in the plural number — “shall call on them, or some one of themP lie could not call on some one of them, if only one person were present.
In the act of 1822, where the same provision is embodied, two witnesses-are expressly required, unless the legacy bequeathed be under the value of $100, It is very evident that the deceased.did not himself consider that the words made use of by him, and what he did on the 4tb, when there were two witnesses present, as amounting'to an actual disposition of his property; nor did he think that he had made a will. For when he was asked, on the 5th instant, by his uncle, how he wished his property- to be disposed of, he enquired whether he had the power to dispose of his property by will; and being answered in the affirmative, by the uncle, he requests that it may be disposed of in a manner different from that spoken of on the 4th. He said, on the 4th instant, when spoken to by the neighbors present: “my horses and other property to my uncle.” On the 5th instant, he said: “my horses to my uncle, and cattle to my sister.” The disposition spoken of, on the 4th instant, is the one probated as a nuncupa-tive will. How is it possible that the deceased intended to make a will on the ^th instant, when he still appeared not to be aware that he had a power and right to do so, until told of it by his unde, on the 5 th instant.
An intention to make a will cannot be considered a fixed one, unless the person making a bequest think he has a right to make it; and where he proceeds to requests a different disposition at the subsequent time, when informed of his right in this respect, he could not have thought any thing said previously obligatory.
What was said on the 5th, cannot be set up as a nuncupative will, because these circumstances plainly show that, at the time the deceased made use of the expressions which were probated as a will, he had not the animus testandi.
On the 4th, there was only one witness present, and I am clearly of *367 opinion that at least two witnesses are required by the act in force at the time this will was set up.
Robert II. Adams, for plaintiff.
W, L. Sharkey, and D. S. and R. J- Walker, for defendant.
The claim of the defendants, under this nuncupative will, which is set up to defeat our statute of distributions, always just and equitable, is presented in an unfavorable aspect. — The party to be benefitted by this bequest, is the uncle of the deceased, and his son. The uncle had been, for a great length of time, his guardian, and principally raised him, and it is to be presumed, had great influence over him. The subject of making this will was at no time first spoken of by the deceased; it at all times came from the friends of the uncle, or from himself; and what the deceased said with respect to the future disposition of his property, proceeded more from the solicitations of the persons who surrounded him, than from his own volition on the subject. The subject of making a will was twice broached to this young man before his death; if he really had any intention of making a will, why not reduce it to -writing, in the usual way, and not leave it to the memory and understanding, and apprehension of those who were present. There is, and can be, no reason given for this omission.
From all these circumstances, the will set up appears to me rather to be the wish of those who surrounded the deceased, than his own deliberate wish and intention. The facts are presented by the proofs taken by depositions in the case: other evidence may have been submitted to the jury on the trial of the issue. I am of opinion, for these reasons, that the jury found correctly in refusing to sustain this nuncupative will-
judges Child and Nicholson concurred.